IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN GUILLERMO DIAZ,<br><br>    Petitioner,<br><br>  v.<br><br>JAMES A. YATES, Warden,<br><br>    Respondent.<br>_____/ | No. C 05-0252 CW<br><br>ORDER DENYING<br>PETITION FOR WRIT<br>OF HABEAS CORPUS |

INTRODUCTION

Petitioner Juan Diaz, an inmate incarcerated at Pleasant Valley State Prison (PVSP) in Coalinga, California, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Respondent James A. Yates, warden of PVSP, opposes the petition.[1] The Court DENIES Diaz's petition for a writ of habeas corpus.

BACKGROUND

Unless indicated otherwise, the following facts are taken from the State appellate court's unpublished opinion ruling on Diaz's direct appeal. Respondent's Exhibit F.

On September 24, 2002, Santa Clara County police officers executed a search warrant for Robert Griffin's home. The officers

---

[1] The Court substitutes James A. Yates, warden of PVSP, where Diaz is currently imprisoned.

1  discovered methamphetamine and evidence of the intent to sell
2  narcotics.  Griffin agreed to cooperate with the officers and
3  called his supplier "Franco" to arrange a purchase.  Griffin stated
4  that Franco was the supplier's street name and that he did not know
5  his true name.  One of the officers testified that Griffin
6  described Franco as "a Hispanic male in his late 20's, possibly
7  early 30's, about three or four inches shorter than myself . . .
8  kind of muscular or husky in stature."  Reporter's Transcript
9  (R.T.) at 63.  The probation report indicates that Griffin said
10 that Franco would be driving a green Ford Thunderbird.

11     Officers conducting surveillance outside of Griffin's house
12 saw a green Ford Thunderbird driven by Diaz, who fit Griffin's
13 description of his supplier.  An officer testified at trial that
14 the car "slowed in front of the residence and the driver of the
15 vehicle appeared to be looking at the front door area, the window
16 area of the residence."  R.T. at 64.  According to the officer, the
17 car continued down the street and made a u-turn at the corner.  Id.
18 The officer testified that as the car passed one of the
19 surveillance vehicles, the driver slowed down and looked at the
20 officer in the car.  Id. at 65.  The car again slowed down as it
21 passed Griffin's house and then stopped at a red light at the
22 corner.

23     The officers decided to stop Diaz for a traffic violation
24 because the car had paper dealer plates and no registration
25 sticker, a violation of the California Vehicle Code.  Neither the
26 California Court of Appeal's decision nor the record offer many
27 details about the stop and subsequent search of the car.
28

2

However, over the course of the search, the officers discovered over half a pound of methamphetamine between the metal panel of the car and the cloth liner of the trunk. R.T. 68. It is not clear whether Diaz gave the officers permission to search the trunk or unlocked the trunk for them because the officer who testified at trial did not arrive on the scene until after the trunk was already opened. Id. A cell phone with the number that Griffin called to arrange the sale was discovered on Diaz's person. R.T. 71. Again, there are few details about the actual search of Diaz's person to locate the telephone and whether it was found before the methamphetamine was discovered or before Diaz was arrested. The officers also discovered work orders and a money order in the car that were made out to Carlos Sanchez and Francisco Diaz. The officers later discovered that these were aliases that Diaz had used.

At the time of the search, Diaz claimed to be a Mexican citizen without identification. The testifying officer remembers Diaz giving a false name; however, the officer could not remember the name Diaz gave. After Diaz was arrested and booked, the officers used his fingerprints to determine his identity. At trial, Griffin identified Diaz as his supplier, "Franco."

Diaz was charged with transportation, sale or distribution of a controlled substance in violation of California Health & Safety Code § 11379, subd. (1), possession for sale of a controlled substance in violation of California Health & Safety Code § 11378, and giving a false name to a peace officer in violation of California Penal Code § 148.9. The information also alleged that

3

Petitioner had a prior conviction for sale of a controlled substance, that he had served two prior prison terms, and that he had a prior strike conviction. A jury found Diaz guilty on all counts.

Diaz filed a timely direct appeal challenging his conviction based on the sufficiency of the evidence. The California Court of Appeal denied that claim in an unpublished written opinion, and the California Supreme Court summarily denied his petition for review on July 21, 2004. Diaz then filed a State petition for a writ of habeas corpus on the same grounds as this petition, ineffective assistance of counsel for failing fully to investigate possible defenses and for not filing a motion to suppress, which the California Supreme Court summarily denied. On January 18, 2005, Diaz filed his petition in this Court.

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a State conviction or sentence on the basis of a claim that was reviewed on the merits in State court only if the State court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;[2] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

---

[2] Both prongs of § 2254(d)(1) apply to questions of law and mixed questions of law and fact. Van Tran v. Lindsey, 212 F.3d 1143, 1150 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-74 (2003).

4

presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Clearly established federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams (Terry) v. Taylor, 529 U.S. 362, 402-04, 412 (2000).  A State court decision may not be overturned on habeas review simply because of a conflict with circuit-based law.  Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000).  However, circuit court decisions may be persuasive authority to determine whether a particular State court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established."  Id.; see also Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 124 S. Ct 446 (2003); Moore v. Calderon, 108 F.3d 261, 264 (9th Cir. 1997).

A State court's decision is "contrary to" Supreme Court law if the State court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or reaches a different conclusion based on facts indistinguishable from a Supreme Court case.  Williams, 529 U.S. at 412-13.  A State court's decision constitutes an "unreasonable application" of Supreme Court precedent if the State court "either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable."  Id. at 407.  An "unreasonable application" of federal law is different from an incorrect or erroneous application of federal law.  Id. at 412.  Accordingly,

5

"a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. The reasonableness inquiry under the "unreasonable application" clause is objective. Id. at 409.

Where, as here, the State court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the State court's decision was objectively reasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the State court's decision was an unreasonable application of clearly established federal law. Id.

## DISCUSSION

Diaz's petition for a writ of habeas corpus is based on a claim of ineffective assistance of counsel based on trial counsel's failure (1) to conduct adequate investigation and (2) to move to suppress evidence seized by the police.[3]

---

[3] The Court also notes that Diaz alleges that he wanted to testify on his own behalf and never knowingly or intelligently waived that right. Petition at 3. Diaz asserts that he told his attorney that he wanted to testify, but that counsel stated "that won't be necessary." Id. Although the ultimate decision whether to testify rests with the defendant, he is presumed to assent to his attorney's tactical decision not to call him to testify. United States v. Joelson, 7 F.3d 174, 177 (9th Cir. 1993). The trial court has no duty to advise the defendant of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred. See United States v. Edwards, 897 F.2d 445, 446 (9th Cir. 1990). Thus, waiver of the right may be inferred

6

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  Id.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim a petitioner must establish two things.  First, he must establish that counsel's performance was deficient, that is, that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Id. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.  However, "strategic choices made after thorough

---

from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so.  See Joelson, 7 F.3d at 177; Edwards, 897 F.2d at 446.  A defendant who wants to reject his attorney's advice and take the stand may do so by insisting on testifying, speaking to the court or discharging his lawyer.  See Joelson, 7 F.3d at 177.  A defendant waives the right to testify if he remains silent in the face of his attorney's decision not to call him as a witness.  See Horton v. Mayle, 408 F.3d 570, 577 (9th Cir. 2005); Dows v. Woods, 211 F.3d 480, 487 (9th Cir. 2000); United States v. Pino-Noriega, 189 F.3d 1089, 1094-95 (9th Cir. 1999).  Therefore, the Court finds that this allegation does not support Diaz's claim of ineffective assistance of counsel.

7

investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690. The Strickland framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. See Williams, 529 U.S. at 404-08.

Petitioner claims that counsel was ineffective for failing to investigate and act on possible defenses and for failing to file a motion to suppress the evidence obtained when the officers searched his car.[4]

A defense attorney has a general duty to make reasonable investigations or to make a reasonable decision that particular investigations are unnecessary. See Strickland, 466 U.S. at 691; Turner, 158 F.3d at 456. Strickland directs that "'a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" Silva v. Woodford, 279 F.3d 825, 836 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 491). When the record shows that the lawyer was well-informed and the petitioner fails to state what additional information would be gained by the investigation he now claims was necessary, an ineffective assistance claim fails. Id.

Further, when a claim of ineffective assistance of counsel is due to a failure to make a motion to suppress, a showing of

---

[4] The Court has already dismissed Petitioner's claim attacking the validity of the search itself as barred by Stone v. Powell, 428 U.S. 465 (1976). See Order to Show Cause at 2. Therefore, the Court does not address those sections of the petition that appear to challenge the search itself.

8

prejudice requires that the petitioner demonstrate that "had the motion been filed, there was a reasonable probability that the evidence would have been suppressed, and the outcome of the trial would have been different."  Lowry v. Lewis, 21 F.3d 344, 346-47 (9th Cir. 1994).

I.  Failure to Investigate a Potential Defense Related to the Amount of Money in Diaz's Possession at the Time of his Arrest

Diaz also alleges that counsel was ineffective for failing to investigate conflicting testimony about the amount of money he had at the time of his arrest.  Petition at 2-3.  Diaz argues that "the conflicting testimony or the lack thereof, is a point of credibility of the officers and the evidence itself."  Id. However, trial counsel did note the discrepancies in his cross examination of the investigating officer's testimony.  See R.T. 95-96.  Further, Diaz does not indicate what counsel was supposed to investigate, or what he might have discovered.  This claim does not provide grounds for granting the petition.

II.  Motion to Suppress

As stated above, to prevail on an ineffective assistance of counsel claim based on counsel's failure to file a motion to suppress, a petitioner must demonstrate that the motion to suppress was meritorious.  It is apparent that counsel considered the legality of the search and then decided not to make a motion on that basis.  In his petition, Diaz notes that trial counsel "mentioned that the search may have been illegal, but never attacked this critical component with a motion to suppress." Petition at 3.  This demonstrates that counsel did in fact consider

9

the legality of the search.  Further, the trial judge noted that, when arguing the motions in limine,[5] defense counsel

> explained at great lengths [his] thought processes and thoroughly analyzed the illegal or legal stop issues and he believed it did not warrant a motion.  The defense attorney went through a 15 step process to the description to the court and opposing counsel of where he would have argued that it was an illegal stop given such factors, but that in totality he believed based upon his experience and research and discussion with other attorneys that he would not be successful in such a motion.

R.T. 24

Based on this record, the Court finds that trial counsel considered the legality of the stop and search, conducted further research and decided that such a motion likely would not be successful.  The police officers had probable cause to believe that Diaz was violating the vehicle code because the car he was driving did not have a registration sticker.  The case law is clear that as long as an officer has probable cause to stop a car for a vehicle code violation, it does not matter whether the vehicle code violation was a pretext.  <u>Whren v. United States</u>, 517 U.S. 806, (1996).  Further, it is well established that under the automobile exception to the warrant requirement, an officer may search a car without a warrant if he or she has probable cause to believe that the car contains contraband.  <u>Carroll v. United States</u>, 267 U.S. 132 (1925).  Here, there was ample evidence to establish probable cause.  Diaz drove by Griffin's house within an hour of Griffin calling his supplier to set up a purchase of methamphetamine.  Diaz

---

[5] None of the actual argument on the motions in limine is included in the record.  It appears from the record that they were argued in the trial judge's chambers.  <u>See</u> R.T. at 25.

10

fit Griffin's description of his supplier and drove a car that fit the description Griffin gave to the police. Further, he acted suspiciously when he realized he was being watched.

Once the officers had probable cause to believe that the car contained contraband, they could search "every part of the vehicle and its contents that [could] conceal" that contraband. United States v. Ross, 456 U.S. 798, 825 (1982). Therefore, it was reasonable for the officers to search behind the paneling of the trunk where they discovered the methamphetamine.

The Court finds that Diaz has not demonstrated a reasonable probability that a motion to suppress would have been granted. Therefore, counsel's decision not to file the motion does not constitute ineffective assistance. Diaz's petition for a writ of habeas corpus is denied to the extent that it is based on this claim.

## CONCLUSION

Based on the foregoing, the Court DENIES Diaz's petition for a writ of habeas corpus. Judgment shall enter accordingly.

IT IS SO ORDERED.

Dated: 3/21/07

CLAUDIA WILKEN
United States District Judge

11